UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NUCOR TUBULAR PRODUCTS, INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO.: 2:23-cv-01087-SGC |
| **BENCHMARK INSURANCE COMPANY**, also known as **BENCHMARK INSURANCE COMPANY, INC.**, and **TIMOTHY L. SMITH**, | ) ) ) ) ) ) |
| | ) |
| **Defendants.** | ) |

### DEFENDANT BENCHMARK INSURANCE COMPANY'S MOTION TO DISMISS AMENDED COMPLAINT

Now comes Defendant Benchmark Insurance Company, by and through counsel, and moves the Court to dismiss Plaintiff's Amended Complaint. In support thereof, Benchmark shows unto the Court as follows:

1. Plaintiff's Complaint is not ripe and is premature.

2. Plaintiff is a Defendant in state court litigation filed against it by Timothy Smith.

3. In the state court litigation, the Complaint makes allegations of negligence only against the Plaintiff in this case.

4. Plaintiff has filed a Third-party Complaint for indemnity against Iron Mountain, which is Benchmark's insured.

1

5. The matters set forth in Plaintiff's Amended Complaint, including but not limited to the Independent Contractor Agreement cited in Plaintiff's Complaint, are disputed and being defended in by Iron Mountain the state court litigation. Iron Mountain contends that the Independent Contractor Agreement was not effective at the time of Smith's injury and did not become effective until after Smith's injury. That is, Iron Mountain in the state court litigation denies Nucor's allegation that the ICA was in effect at the time of the accident.

6. The facts necessary to a determination of Plaintiff's status vel non as an additional insured under the Benchmark policy issued to Iron Mountain will be introduced in the state court trial. Therefore, another trial in this court will be redundant and a waste of judicial resources.

7. For example, there is a factual issue of whether there was a binding contract between the plaintiff and Iron Mountain pursuant to which Iron Mountain was obligated contractually to have plaintiff named as an Additional Insured to Iron Mountain's policy. If the jury finds that there was no such contract, then plaintiff is not an additional insured under the policy and is not entitled to contractual indemnity from Iron Mountain.

8. There is the factual issue of whether Smith's accident and injuries were due to the sole negligence of the plaintiff, which Smith and Iron Mountain both allege in the underlying action.

9. The trial of the underlying case may result in a verdict in favor of the plaintiff in this case, rendering any duty to indemnify moot.

10. The trial of the underlying case may result in a verdict in favor of Iron Mountain on the Third-party Complaint filed against it by the plaintiff in this case, rendering any duty to defend and indemnify moot.

11. The trial of the underlying case may result in a verdict which establishes that the plaintiff in this case was solely negligent, which will render any duty to defend and indemnify moot.

12. The trial of the underlying case may result in a verdict which establishes that the plaintiff in this case did not have a contract with Iron Mountain by which Iron Mountain was obligated to name the plaintiff as an Additional Insured, which will render any duty to defend and indemnify moot. Nucor's *allegation* that it is an Additional Insured is not sufficient to establish that it is when the insured, Iron Mountain, denies that allegation.

13. There are factual issues about what, if any contract was in effect when Iron Mountain was performing work for Nucor and whether Nucor was solely

negligent. The resolution of those factual issues is for the jury in the underlying case, not for resolution in this case.

14. The jury verdict in the underlying case may render all of plaintiff's claims in this case moot.

15. Therefore, Plaintiff's Complaint is not ripe and premature and is due to be dismissed.

16. This Court should abstain from exercising jurisdiction over Plaintiff's Complaint for Declaratory Judgment and should dismiss the Complaint without prejudice.

In support of Benchmark's motion, Benchmark shows unto the Court as follows:

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a), states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . ." "More than 60 years ago, the Supreme Court [in *Brillhart*] opined that it would be both 'uneconomical' and 'vexatious' for a federal district court to hear a declaratory judgment action, concurrently with ongoing proceedings involving the same parties and same legal issues (not arising under federal law) in state court." *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, No. 08-0455-WS-M, 2008 U.S. Dist. LEXIS 105010, *8 (S.D. Ala. Dec. 29, 2008)

(citing *Brillhart*, 316 U.S. at 495)). In *Wilton*, the U.S. Supreme Court held that the DJA is "an enabling Act, which confers a ***discretion*** on the courts rather than an absolute right upon the litigant." 515 U.S. at 287 (emphasis added). Simply put, Congress' permissive use of the word "may" indicates that the DJA "only gives federal courts competence to make a declaration of rights" but "it does not impose a duty to do so." *Ameritas*, 411 F. 3d at 1330; *see also Wilton*, 515 U.S. at 286 ("[s]ince its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"). As stated by the U.S. Supreme Court in *Brillhart*, "[a]lthough the District Court ha[s] jurisdiction of the suit under the [DJA] . . . , it [i]s under no compulsion to exercise that jurisdiction." 316 U.S. at 494. Furthermore, "[t]he *Brillhart* Court admonished lower courts scrupulously to avoid what it termed '[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation.'" *Westchester*, 2008 U.S. Dist. LEXIS 105010 at *8 (*citing Brillhart*, 316 U.S. at 495). Accordingly, "[i]n the wake of *Brillhart*, courts in [the Eleventh] Circuit have long recognized that they have discretion to 'decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties.'" *Id*. (*citing Ven-Fuel, Inc. v. Dept. of the Treasury*, 673 F. 2d 1194, 1195 (11th Cir. 1982)).

The most frequent situation where *Brillhart/Wilton/Ameritas* abstention is

sought is virtually identical to the situation presented in the case at bar – where a party seeks a declaration on policy coverage when the issue of policy coverage (or the facts determinative of the policy coverage) is (are) simultaneously being litigated in a state court action. As noted by the Third Circuit, however, "[t]he desire of insurance companies . . . to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Companies v. Summy*, 234 F. 3d 131, 136 (3rd Cir. 2000). [1]

In *Ameritas*, the Eleventh Circuit outlined nine factors that a district court should consider in determining whether to accept or decline jurisdiction over a DJA action when a related state action is pending:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the

---

[1] See also Government Employees Ins. Co. v. Dizol, 133 F. 3d 1220, 1225 (9th Cir.1998) (federal court "should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation"); Mitcheson v. Harris, 955 F. 2d 235, 237-39 (4th Cir.1992) (citing as reasons to dismiss declaratory actions the philosophy of judicial federalism, as well as pragmatic concerns of efficiency and comity).

>friction between our federal and state courts and improperly encroach on state jurisdiction;
>
>(6) whether there is an alternative remedy that is better or more effective;
>
>(7) whether the underlying factual issues are important to an informed resolution of the case;
>
>(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
>(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

411 F. 3d at 1330-1331.  In so doing, the court explained that the above list "is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*." *Id*.

Moreover, it held that district courts have "substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." *Id*. at 1332 (*quoting Wilton*, 515 U.S. at 286).  The Eleventh Circuit in *Ameritas* ultimately upheld a district court's refusal to assert jurisdiction – even when the district court had considered only two of the factors: (1) that the state court action encompassed the entire controversy, and the federal action involved only some of the parties and some of the claims; and (2) that the federal action would improperly interfere with the state action. *See id*. at 1331.  When the *Ameritas* factors are applied to the case at bar, it is clear that this Court should

abstain from hearing this case.

The first guidepost, "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts," weighs in favor of abstention. The dispute in this Court concerns the interpretation of a contract issued to an Alabama corporation (the alleged Independent Contractor Agreement), and Alabama law will answer the questions raised regarding that contract. The dispute in this Court also concerns facts regarding whether there was an ICA in force and effect, and whether plaintiff was solely negligent. Thus, the Alabama Courts have a substantial interest in deciding the issues raised in this dispute. *See Lexington Ins. v. Rolison*, 434 F. Supp. 2d 1228 (S.D. Ala. 2006) (determining that Alabama has substantial interest in deciding Alabama state law issues concerning interpretation of insurance contract issued to an Alabama business, with respect to an Alabama judgment).

The second guidepost, "whether the judgment in the federal declaratory action would settle the controversy," also weighs in favor of abstention. The opposite is true. The state court action will settle the controversy because the facts necessary for a determination of plaintiff's claims in this case will be introduced in the state court action.

As noted above, the jury's verdict may render all of plaintiff's claims in this case moot. Because the state court action would resolve this action, the Court

should abstain from exercising jurisdiction in this case.

The third guidepost, "whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue," is, in this case, the same as the second guidepost. The declaratory action here would not clarify the legal relations at issue; those relations are going to be clarified by the state court action.

The State Court is equally capable of making that determination. As one Alabama district court noted, "[t]he ability to clarify the legal relationships involved is in no way unique to this federal declaratory action." *Canal Ins. Co. v. Morgan*, No. 06-0727-WS-M, 2007 U.S. Dist. LEXIS 5251, *10 (S.D. Ala. Jan. 19, 2007).

The weight of the fourth guidepost, "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' – that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable," cannot currently be determined. However, the absence, if it is absent, of that one factor does not mean that the court should exercise jurisdiction.

The fifth guidepost, "whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction," weighs heavily in favor of abstention. The declaratory judgment claim asserted by Plaintiff raises the same issues raised in the State Court action – whether the ICA was even in effect on the date of the accident, whether the plaintiff

9

was solely negligent. If this Court were to retain jurisdiction and address the claims raised herein, the State Court would be put in the position of either going forth on the same parallel course or staying its action to await this Court's resolution of the issue of coverage before it contemplates the additional issues before it. This would, without doubt, cause friction between the courts and encroach on the State Court's jurisdiction.

The sixth guidepost, "whether there is an alternative remedy that is better or more effective," again weighs in favor of abstention. As noted above, there are more issues present in the State Court action than are raised in the action before this Court. Accordingly, the more efficient method of handling all of the claims that have arisen between the parties is for the State Court action to proceed to a resolution of all issues. This would be much more efficient than a tag-team approach by two courts.

The seventh and eighth guideposts, "whether the underlying factual issues are important to an informed resolution of the case" and "whether the state trial court is in a better position to evaluate those factual issues than is the federal court," also favor abstention. The State Court is in a better position to evaluate underlying factual issues. It is more efficient for one court to undertake this fact-finding process and handle all disputes than for two courts to separately undertake the process and handle the claims piecemeal.

The ninth guidepost, "whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action," weighs heavily in favor of abstention. All claims relating to the disputes in this Court and the State Court are matters of Alabama state law. There is no federal common or statutory law to be considered in resolving the issues.

Based on the above, it is Defendant's position that this Court should abstain from exercising jurisdiction.

Because plaintiff's complaint for declaratory judgment is not ripe and is premature, so, too, are the ancillary claims for breach of contract and bad faith. Those claims are intertwined with the coverage vel non afforded to the plaintiff. Therefore, those claims are also not ripe and premature.

DONE this the 30th day of October, 2023.

/s/ Micheal S. Jackson
MICHEAL S. JACKSON (ASB-8173-078M
Attorney for Benchmark Insurance Company
WEBSTER, HENRY, BRADWELL,
COHAN, SPEAGLE & DESHAZO, P.C.
P. O. Box 239
Montgomery, AL  36101-0239
(334) 523-8629 / (334) 264-9599 (fax)
mjackson@websterhenry.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2023 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan S. Harbuck, Esq.
HARBUCK KEITH HUNT & PALMER, LLC
3500 Blue Lake Drive, Suite 440
Birmingham, AL 35243
jharbuck@HKH.law

C. Carter Clay, Esq.
2201 Morris Avenue
Birmingham, AL 35203

                                               /s/ Micheal S. Jackson
                                               OF COUNSEL